# EXHIBIT A

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
NO. _____

TELIA KIVETT; KARYN MULLIGAN; WAKE COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; and NORTH CAROLINA REPUBLICAN PARTY,

*Plaintiffs*,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections,

*Defendants*.

**VERIFIED COMPLAINT**

NOW COMES Plaintiffs Telia Kivett, Karyn Mulligan, the Wake County Republican Party ("Wake GOP"), the Republican National Committee ("RNC"), and the North Carolina Republican Party ("NCGOP"), by and through undersigned counsel and, pursuant to Rules 7 of the North Carolina Rules of Civil Procedure file this Verified Complaint seeking certain injunctive and declaratory relief, as well as a Writ of Mandamus compelling the North Carolina State Board of Elections ("NCSBE") and its members, Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive Director

1

Karen Brinson Bell (collectively "Defendants") to fulfill their duties set forth in N.C. Gen. Stat. § 163-82.4 *et seq.* In support, Plaintiffs allege as follows:

<h2 align="center">INTRODUCTION</h2>

1.      The North Carolina Constitution provides several preconditions for a person wishing to vote in the state's elections. One of those requirements is that each voter must be registered. *See* N.C. Const. art. VI § 3.

2.      Pursuant to this mandate, the NCSBE is statutorily empowered with the duty to create voter registration application forms. *See* N.C. Gen. Stat. § 163-82.3. These forms are the vehicle through which certain required information regarding North Carolina's electoral populace is maintained, ensuring that every person attempting to vote in the state's elections is qualified under all relevant laws. *See, e.g., id.* at §§ 163-82.4 and 82.11.

3.      Importantly, North Carolina's voter registration form is required to collect, *inter alia*, the applicant's driver's license number or social security number. *See* N.C. Gen. Stat. § 163-82.4(a)(11). Only if the applicant does not have either number does state law allow the NCSBE to assign the applicant a unique voter registration number. *Id.* at § 82.4(b). And if a voter has the required information but fails to provide it on the registration form, then the NCSBE and its County Boards of Election ("County Boards") must follow a set of statutory procedures and timelines in order to determine if the affected person's vote may be counted. *Id.* at § 82.4(f).

4.      For over a decade the NCSBE employed a statewide voter registration form which failed to collect certain statutorily required identification information, including the applicant's driver's license number and social security number, resulting in approximately 225,000 voter registration applications being processed and accepted despite the forms' noncompliance with state law.

5.     Now, in the aftermath of the November 5, 2024 general election contests for state offices, the NCSBE has not only failed to collect this required information from at least 60,000 voters with incomplete registration forms and counted their votes in violation of state law, but the NCSBE has made it abundantly clear that, absent an order from this court, they will fail to uphold state law and will, in fact, do everything in their power to resist compliance with their duties thereunder.

6.     Not only do these actions threaten the very integrity of North Carolina's elections, but they fly in the face of the NCSBE's and the County Boards' statutory duties. This dereliction has stained the state's November 5, 2024 election results, directly undermining North Carolinians' trust in the same.

7.     In refusing to cure their ongoing violations of state law, the NCSBE has affirmatively ignored potential statutory cure processes created by the General Assembly. *See* N.C. Gen. Stat. § 163-82.4(f). Instead, the NCSBE has elected to expend tremendous time, energy, and taxpayer resources to resist compliance with what state law requires of them. Nevertheless, it is not too late to afford Plaintiffs—and the qualified voting populace of North Carolina—the relief sought, creating finality in the state's elections and restoring trust in its results. However, time is of the essence.

## PARTIES

8.     Telia Kivett is a resident of Salemburg, North Carolina. She is a registered Republican voter in Sampson County. Ms. Kivett has voted in previous state and local elections, and she intends to vote in future elections. As a concerned citizen and a registered voter in North Carolina, Ms. Kivett has an interest in protecting her vote from being diluted by votes cast by individuals who were unlawfully registered as a result of Defendants' unconstitutional actions.

3

9.      Karyn Mulligan is a resident of Holly Springs, North Carolina. She is a registered Republican voter in Wake County. Ms. Mulligan has voted in previous state and local elections, and she intends to vote in future elections.

10.     Ms. Mulligan also serves as chair of the Wake County Republican Party. She brings this suit in both her individual capacity and in her capacity as chair of Wake GOP.

11.     The Wake County Republican Party is the county party affiliate of the North Carolina Republican Party and is a political committee as defined by N.C. Gen. Stat. § 163-278.6(74) and 52 U.S.C. § 30101(4). Wake GOP's membership includes all registered Republicans in Wake County, and it exists to elect Republicans to state and local offices in North Carolina. Wake GOP's principal place of business is 1401 Sunday Dr., Suite 105, Raleigh, NC 27607.

12.     The Republican National Committee is the national committee for the Republican Party; representing all registered Republicans across both the state and nation, as well as the values they stand for. The RNC serves as the collective voice for the Republican Party's platform. It is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14) and a political party as defined by N.C. Gen. Stat. § 163-96. The RNC's principal place of business is 310 First Street SE, Washington, D.C.

13.     The RNC's core mission involves organizing lawful voters and encouraging them to support Republican candidates at all levels of government, including throughout North Carolina. The RNC expends significant time and resources fighting for election security and voting integrity across the nation, including in North Carolina. These efforts are intended to ensure that the votes and voices of its members, its candidates, and the party are not silenced or diluted in any way. Recent rises in non-citizens and other unqualified persons voting or seeking to vote in elections

has forced the RNC to divert its efforts and funds in order to hold elections officials accountable to what both federal and state laws require.

14.     The North Carolina Republican Party is a state committee of the Republican Party, as defined by 52 U.S.C. § 30101(15), and a political party as defined by N.C. Gen. Stat. § 163-96. The NCGOP represents the interests of registered Republicans across North Carolina. Its headquarters and principal place of business is 1506 Hillsborough St, Raleigh, NC 27605. The NCGOP represents the interests of registered Republican voters, residing across all one hundred counties in the state. The NCGOP also advocates for the interests of tens of thousands of non-affiliated voters who align with various aspects of the Republican Party platform.

15.     The NCGOP's mission and platform largely mirror that of the RNC, including an emphasis on election integrity and security. The NCGOP's core mission includes counseling interested voters and volunteers on election participation including hosting candidate and voter registration events, staffing voting protection hotlines, investigating reports of voter fraud and disenfranchisement, and providing election day volunteers in all one hundred counties across North Carolina. The NCGOP spends tremendous time and effort advocating for its members throughout all levels of state government, working to make sure they are heard both at the ballot box and beyond.

16.     Plaintiffs have organizational standing to bring this action. Defendants' actions and inaction directly impact Plaintiffs' core organizational missions of election security and providing services aimed at promoting Republican voter engagement and electing Republican candidates for office. Defendants' violations of statewide voter registration laws and the subsequent refusal to remedy their wrongdoings, in accordance with what state law requires, has forced Plaintiffs to divert significantly more of their resources into combatting election fraud in North Carolina.

Plaintiffs' organizational and voter outreach efforts have been and will continue to be significantly stymied due to Defendants' ongoing failures. As a result, Plaintiffs will have no choice but to expend increased amounts of time and money, beyond what they would have already spent, in order to combat this unwarranted interference with their central activities. For example, because of Defendants' violations of state law, Plaintiffs will need to commit added time and resources into monitoring North Carolina's voter rolls, voter activity, and responding to instances of potential voter fraud in upcoming elections, tasks required of Defendants under state law.

17.     Additionally, NCGOP has associational standing because its members have standing in their own right to challenge Defendants' actions here. NCGOP represents millions of registered Republican voters across the state of North Carolina, including at least one registered Republican voter in every one of the state's one hundred counties, which is a matter of public record. NCGOP's members are harmed by Defendants' ongoing state law violations. These members' votes are undoubtedly diluted due to ineligible voters participating in elections due to Defendants' statutory violations. Additionally, these members' rights to participate in a fair and secure electoral process, free from voter fraud, will be significantly hindered. Ensuring such freedom and security in all elections throughout North Carolina is germane to the NCGOP's organizational mission.

18.     Plaintiffs are further harmed in their ability to effectively compete in elections across the state as Defendants' refusal to collect accurate voter registration information risks opening the door to potentially fraudulent votes and inaccurate election results. This harm is especially palpable considering North Carolina's party-based primary system which makes verifying the accuracy of each voter registration form that much more crucial.

19.     The North Carolina State Board of Elections is the state agency tasked with "general supervision over primaries and elections of the state." *See* N.C. Gen. Stat. § 163-22. The NCSBE is tasked with ensuring that elections in North Carolina comply with all laws and, in the NCSBE's own words, "ensur[ing] that elections are conducted lawfully and fairly."[1] Further, the NCSBE is tasked with overseeing, advising, and directing all 100 county boards of election across the state. *See* N.C. Gen. Stat. § 163-22 *et seq.*

20.     Karen Brinson Bell is the Executive Director of the NCSBE. In this capacity, Ms. Brinson Bell oversees elections in all one hundred counties in North Carolina and administering all elections occurring therein. *See* N.C. Gen. Stat. § 163-27(d). Ms. Brinson Bell is sued in her official capacity.

21.     Alan Hirsch is the Chair of the NCSBE. He resides in Chapel Hill, North Carolina. Mr. Hirsch is sued in his official capacity.

22.     Jeff Carmon is the Secretary of the NCSBE. He resides in Snow Hill, North Carolina. Mr. Carmon is sued in his official capacity.

23.     Stacy Eggers, IV is a member of the NCSBE. He resides in Boone, North Carolina. Mr. Eggers, IV is sued in his official capacity.

24.     Kevin N. Lewis is a member of the NCSBE. He resides in Rocky Mount, North Carolina. Mr. Lewis is sued in his official capacity.

25.     Siobhan O'Duffy Millen is a member of the NCSBE. She resides in Raleigh, North Carolina. Ms. Millen is sued in her official capacity.

---

[1] https://www.ncsbe.gov/about

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. § 7A-245. Further, this Court has jurisdiction over the claims asserted herein pursuant to N.C. Gen. Stat. § 7A-240 as all claims are of a civil nature, arising exclusively under the General Statutes of North Carolina.

27.     This Court has personal jurisdiction over the NCSBE as it is a state agency in North Carolina.

28.     This Court has personal jurisdiction over Executive Director Karen Brinson Bell, Chair Alan Hirsch, Secretary Jeff Carmon, Stacy Eggers IV, Kevin Lewis, and Siobhan O'Duffy Millen as each is sued in their official capacities as appointed officials in North Carolina. Each is a citizen of North Carolina and each resides in the state.

29.     Venue is proper in this court pursuant to N.C. Gen. Stat. § 1-82.

## FACTUAL ALLEGATIONS

30.     As alleged above, the North Carolina Constitution establishes several prerequisite qualifications for voting eligibility, including that any person wishing to vote must be registered. *See* N.C. Const. art. VI, § 3.

31.     In order to ensure compliance with other applicable voter qualification laws, North Carolina General Statute § 163-82.3 establishes and empowers the NCSBE to promulgate a registration form, while § 82.4(a) enumerates certain required information which must be collected on the form <u>before</u> it may be processed and the applicant deemed "registered."

32.     Further, the North Carolina General Assembly clearly delineated which of these categories of information were non-negotiable when they specifically carved out certain ones which the absence of "shall not" be the basis for a registration form's denial. *See* N.C. Gen. Stat.

§ 82.4(a) (listing race, ethnicity, gender, or telephone number as the sole required items which cannot cause a registration form to be denied if omitted from the applicant's submission).

33.     Setting these specific categories aside, the remaining items are absolutely necessary for a person to be deemed a "registered" voter under North Carolina law. And if an applicant fails to provide this required information, the General Assembly places the onus on the NCSBE to collect it in a timely manner in order for any ballots cast by the applicant to count in future elections.

**I.     *The Purpose and Function of North Carolina's Voter Registration Form***

34.     North Carolina General Statute § 163-82.3 assigns the NCSBE with the duty to develop a statewide voter registration form.

35.     The statute also identifies the purposes of North Carolina's voter registration form, providing that a person may use it to:

> "(1) Register to voter.
>
> (2) Change party affiliation or unaffiliated status.
>
> (3) Report a change of address within a county.
>
> (4) Report a change of name."

*See* N.C. Gen. Stat. § 163082.4(a)(1)-(4).

36.     Pursuant to the NCSBE's duty to develop and maintain a statewide voter registration form, North Carolina General Statute § 163-82.4 provides a set of identifying information which the form must collect, including the registrant's:

> "(1) Name,
>
> (2) Date of Birth,
>
> (3) Residence address,

9

(4) County of residence,

(5) Date of Application

(6) Gender,

(7) Race,

(8) Ethnicity,

(9) Political party affiliation [ . . . ],

(10) Telephone number [ . . . ],

(11) **Drivers license number or, if the applicant does not have a drivers license number, the last four digits of the applicant's social security number** [ . . . ].

*See* N.C. Gen. Stat. § 163-82.4(a) (emphasis added).

37.    Only if a registrant does not have either a driver's license number or a social security number may the NCSBE assign the person a unique voter identification number. *See* N.C. Gen. Stat. § 163-82.4(b).

38.    Critically, the statute does not contemplate or provide the NCSBE the authority to unilaterally assign such an identification number to a registrant who first fails to provide either a driver's license or social security number in the first instance and then the NCSBE fails to inquire into such a number's existence, as required by state law. Simply put, the unique voter identification number provision of N.C. Gen. Stat. § 163-82.4(b) does not absolve the NCSBE of its failure to collect or inquire into the existence of the information required by § 82.4(a)(11).

39.    By specifically enumerating this required information which must be collected via the registration form—and creating a backup option if a registrant does not have specific information—the General Assembly unambiguously conveyed that this information is absolutely necessary before a registration may be processed and accepted.

40. In fact, many of the listed items specifically determine if the registrant meets other constitutional voting eligibility requirements. *See, e.g.*, N.C. Const. art VI § 2 (a person voting in North Carolina must be a resident of the state).

41. Thus, both the statute and common sense make clear that the purpose of the state's voter registration form is multifaceted. Not only does the registration form ensure the accurate collection and verification of certain identifying information from the registrant, but it is the essential item upon which compliance with several state constitutional and state statutory demands are measured.

## II. *North Carolina Law Establishes a Process Through Which the NCSBE Must Endeavor to Collect Missing Registration Information and Conditions By Which the Registrant's Vote May Still Count.*

42. North Carolina law provides a failsafe for a registrant who does not provide any of the required identification information set forth in N.C. Gen. Stat. § 163-82.4(a) and the exclusive process by which ballots cast by persons with these incomplete registrations may be counted in a future election.

43. Should a registrant fail to complete any of the aforementioned required information, then North Carolina law provides a process by which the County Boards must contact the voter to notify them of their omission and provide them an opportunity to properly complete the registration form by 5:00 p.m. the day before the county canvass. *See* N.C. Gen. Stat. § 163-82.4(f).

44. If the voter corrects their form and provides the missing information before election day, then the person may vote. *Id.* And if the correct information is not provided by election day, then the person must vote a provisional ballot. *Id.* Finally, if the correct information is provided by 5:00 p.m. the day before the county canvass, then the County Boards must review the registration and count all portions of the provisional ballot for which the registrant is eligible to vote.

11

45.     This process puts the initial burden on the NCSBE and the County Boards, requiring them to contact voters who fail to provide all required information on their registration form.

46.     Then, assuming contact is made, the burden shifts to the voter who must provide adequate identification information prior to 5:00 p.m. the day before the county canvass.

47.     Not only does this thorough process further evince legislative intent for complete voter registration applications with all required information, but it also reveals the express and exclusive conditions upon which a registrant who proffers an incomplete registration form may still have their vote counted in an election. In short, the person's vote may only count if their missing information is provided and confirmed by a date and time certain.

**III.     *For Over a Decade the NCSBE Employed a Voter Registration Form Which Failed to Collect Certain Statutorily-Required Identification Information From Registrants and the NCSBE Then Refused to Contact Individuals Who Provided Incomplete Registrations*.**

48.     Prior litigation has revealed that, for at least a decade, the NCSBE used a statewide voter registration form which failed to collect a registrant's drivers license number and/or the last four digits of their social security number. *See Republican National Committee v. North Carolina State Board of Elections*, 5:24-CV-00547-M (E.D.N.C. 2024).

49.     Because of this faulty registration form, the NCSBE and the County Boards accepted and processed approximately 225,000 voter registrations despite each of the forms failing to provide the information required by North Carolina General Statute § 163-82.4(a).

50.     While the NCSBE did correct their registration form on a forward-looking basis once its improprieties were brought to their attention, the record in both that litigation and a

relevant NCSBE order[2] makes clear that the NCSBE wholly refuses to contact <u>any</u> of the registrants who failed to provide a statutorily-required driver's license number and/or the last four digits of their social security number.

51.     In the NCSBE's opinion, these persons will filter themselves out at the polls due to other unrelated voting requirements such as photo-ID.[3]

52.     The NCSBE then employed this faulty logic to repeatedly reject requests for reconsideration and other relief aimed at correcting their errors.

53.     Not only does this do-nothing approach miss the mark, but it is completely at odds with the confirmatory and investigatory duties set forth in N.C. Gen. Stat. § 163-82.4(f).

54.     This empty promise also proved to be patently untrue, as post-election audits performed by third parties using documents provided by the NCSBE pursuant to public records requests confirmed that at least 60,000 people voted in North Carolina's November 5, 2024 state office general election contests without providing either a driver's license number or a social security number.

55.     Further, to the extent this information was shown at the polls—for instance, a person showing a poll worker their driver's license number pursuant to N.C. Gen. Stat. § 163-

---

[2] *See* NCSBE Order (Dec. 6, 2023) (available at:
https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/Orders/Other/2023%20HA VA%20Complaint%20-%20Snow.pdf) [last accessed Nov. 3, 2024].
[3] Notably, N.C. Gen. Stat. § 163-82.4(a)(11) does not contain any exceptions for alternative forms of ID, and for good reason. The driver's license and/or social security numbers are used to confirm a person's eligibility to vote, including things such as felony and citizenship status, whereas these alternative forms identified by the NCSBE are used to confirm that the person at the polls voting is who they claim to be. *Compare* N.C. Gen. Stat. §§ 163-82.4, 82.12, and 166.12(d) (establishing the requirements, procedures, and purpose for obtaining and matching a registrant's driver's license number or social security number to confirm voting eligibility); *with* 08 NCAC 17.0101 *and Holmes v. Moore*, 384 N.C. 426, 430-31 (2023) (discussing the purpose and exceptions to North Carolina's voter identification statute in confirming a voter's identity at the polls).

13

166.16—it is clear that this information was not recorded by the NCSBE or the County Boards, thus leaving the person's registration incomplete.

56.    As of the date of this Complaint, the time for county canvasses has passed and the NCSBE and the County Boards failed to collect the information required by N.C. Gen. Stat. § 163-82.4(a)(11) in the manner and time demanded by § 82.4(f) for at least 60,000 persons who cast ballots in the November 5, 2024 state office general election contests.

57.    Thus, the NCSBE plainly ignored the processes and requirements provided in General Statute § 163-82.4(f) and instead allow these persons to vote without any confirmation of their qualifications to do so.

58.    The NCSBE's decision to ignore its duties under North Carolina law is untenable and demands immediate correction in order to ensure the integrity of North Carolina's elections and their results.

59.    Yet instead of working towards any timely affirmative relief, the NCSBE has consistently resisted any corrective actions, including arguing that it would be "unfair" to discount the ballots of persons who previously voted in prior elections without providing the required information and (wrongly) believed they were registered.[4] Tellingly, the NCSBE does not and cannot cite to any statutory authority allowing them to ignore what state law demands of them.

## CLAIM FOR RELIEF

## COUNT ONE: VIOLATION OF N.C. GEN. STAT. § 163-82.4 – WRIT OF MANDAMUS AND MANDATORY INJUNCTION

60.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

---

[4] *See, e.g.,* December 13, 2024 Order re Election Protests of Jefferson Griffin, Ashlee Adams, Frank Sossamon, and Stacie McGinn, available at:
https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/Orders/Protest%20Appeals/
Griffin-Adams-McGinn-Sossamon_2024.pdf

14

61. North Carolina law unambiguously requires Defendants to collect certain information from a person registering to vote <u>before</u> the registration is accepted or a ballot cast by that person may be counted.

62. Additionally, North Carolina law provides an unambiguous statutory procedure which Defendants must follow for contacting persons who submit incomplete voter registration forms, including those who failed to provide their driver's license number and/or social security number as identified herein.

63. Both of these statutory duties are ministerial in nature and provide no room for Defendants to deviate from their requirements. *See* N.C. Gen. Stat. § 163-82.4(a) (stating that the registration form "<u>shall</u>" require certain information) (emphasis added); *see id.* at 82.4(f) (stating that, upon receipt of an incomplete registration form the County Boards "<u>shall</u>" take certain actions in an attempt to cure it) (emphasis added).

64. Despite this clear process, Defendants affirmatively refused to contact any of the 225,000 people who failed to provide statutorily required information and whose registration forms were nevertheless processed and accepted and whose ballots were improperly counted.

65. As a result, the NCSBE violated N.C. Gen. Stat. § 163-82.4 when they allowed these registrations to be processed and accepted despite their missing certain required information.

66. Even still, state law mandates an express process for correcting these omissions. *See* N.C. Gen. Stat. § 163-82.4(f).

67. It is without dispute that the NCSBE refused to follow the process set forth in General Statute § 163-82.4(f), instead expressing their intent to "wait and see." This position finds no support in any law.

68.     Further, this approach wholly failed to collect the missing information, resulting in at least 60,000 individuals casting ballots in the November 5, 2024 state office general election contests despite each person's registration failing to provide either a driver's license number or the last four digits of their social security number.

69.     Based on the directives set forth in N.C. Gen. Stat. § 163-82.4(f), these ballots should not have been counted unless the missing information was received by 5:00 p.m. the day prior to the county canvass.

70.     Upon information and belief, this information was not requested from the voters or received by the NCSBE or the County Boards by this date, and the NCSBE still allowed the ballots to be counted.

71.     These ballots should not have been counted as these voters were never registered under state law and the state Constitution limits voting eligibility to only those persons who are registered.

72.     Unless enjoined and ordered to comply with their statutory duties, Defendants will certify and finalize election results containing votes which violate state law.

73.     Defendants must be ordered to comply with their statutory duties and uphold what state law requires of them by following all procedures and deadlines established in N.C. Gen. Stat. § 163-82.4. To the extent these procedures and deadlines were not followed, Defendants must be ordered to discount these ballots from all vote totals in all state office contests in the November 5, 2024 election.[5]

---

[5] For clarity, Plaintiffs do not seek the wholesale removal of these persons from the state's voter registration list as these individuals may theoretically be able to provide the missing information before a county canvass in a future election by following the procedures set forth in N.C. Gen. Stat. § 163-82.4.

16

74.     More specifically, Defendants must be ordered to retabulate all state office election contests results from the November 5, 2024 state office general election contests, removing all ballots cast by persons who returned registration forms without the information required by N.C. Gen. Stat. § 163-82.4(a)(11) from the final election counts.

75.     Alternatively, Defendants' violations may be cured through the establishment of a judicial process wherein such affected individuals may be afforded an expedited but reasonable time to provide the information which the NCSBE should have originally collected in accordance with N.C. Gen. Stat. § 163-82.4(f), and if such information is not received and verified by said date, then Defendants must remove the person's vote from the final election counts for all state office election contests in the November 5, 2024 state general election.

76.     Additionally, Defendants must be ordered to follow the processes and procedures set forth in N.C. Gen. Stat. § 163-82.4(f) in order to request the missing information from all affected persons and confirm and complete these incomplete registrations such that they may validly vote in future elections, assuming satisfaction of all relevant qualifications to do so.

## COUNT TWO: VIOLATION OF N.C. CONST. ART. I § 10 – MANDATORY INJUNCTION

77.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

78.     The North Carolina Constitution declares that "[a]ll elections shall be free." N.C. Const. art. I § 10.

79.     Similarly, the North Carolina Constitution mandates that all persons wishing to vote in the state's elections must, among other things, be registered to vote. *See* N.C. Const. art. VI § 3.

80.     Pursuant to this directive, the North Carolina General Assembly established clear processes by which a person may be properly registered and incomplete registrations may be cured

in time to be counted for an election. Specifically, N.C. Gen. Stat. § 163-82.4(f) creates an affirmative command and a duty imposed on Defendants by law.

81.     Defendants wholly failed to comply with these processes for the November 5, 2024 state office general election contest when they allowed ballots to be cast and counted by persons with statutorily deficient registration forms in spite of N.C. Gen. Stat. § 163-82.4's requirements.

82.     By ignoring their statutory and constitutional duties and allowing persons who are not properly registered to vote, Defendants directly diluted the votes and ability of lawfully qualified voters to select their representatives.

83.     Defendants' actions similarly infringed on the rights of lawfully registered voters, such as Ms. Kivett and Ms. Mulligan, to participate in elections free from interference by unqualified persons and unlawful votes.

84.     Defendants cannot offer any legitimate justification, let alone a compelling interest, for this dereliction of duty.

85.     Defendants must be ordered to immediately and permanently rectify this harm in order to protect the integrity of both the November 5, 2024 state office general election contests and all future state elections in North Carolina.

### COUNT THREE: VIOLATION OF N.C. CONST. ART. I § 19 – MANDATORY INJUNCTION

86.      The foregoing paragraphs are incorporated by reference as if fully set forth herein.

87.     The North Carolina Constitution provides equal protection under state law for all North Carolinians. N.C. Const. art. I § 19.

88.     Similarly, the North Carolina Constitution mandates that all persons wishing to vote in the state's elections must, among other things, be registered to vote. *See* N.C. Const. art. VI § 3.

18

89. Pursuant to this directive, the North Carolina General Assembly established clear processes by which a person may be properly registered and incomplete registrations may be cured in time to be counted for an election. Specifically, N.C. Gen. Stat. § 163-82.4(f) creates an affirmative command and a duty imposed on Defendants by law.

90. Defendants wholly failed to comply with these processes for the November 5, 2024 state office general election contest when they allowed ballots to be cast and counted by persons with statutorily deficient registration forms in spite of N.C. Gen. Stat. § 163-82.4's requirements.

91. By ignoring their statutory and constitutional duties and allowing persons who are not properly registered to vote, Defendants directly diluted the votes of lawfully qualified voters, such as Ms. Kivett and Ms. Mulligan, all of whom complied with North Carolina law in registering to vote.

92. Defendants cannot offer any legitimate justification, let alone a compelling interest, for this dereliction of duty.

93. Defendants must be ordered to immediately and permanently rectify this harm in order to protect the integrity of both the November 5, 2024 state office general election contests and all future state elections in North Carolina.

### COUNT FOUR: DECLARATORY JUDGMENT

94. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

95. Plaintiffs bring this claim for declaratory judgment pursuant to N.C. R. Civ. P. 57 and N.C. Gen. Stat. §§ 1-253 *et seq.*, as to the rights, status, or other legal relations between Plaintiffs and Defendants and for judicial review of the NCSBE's affirmative refusal to contact any affected registrants as set forth in its December 6, 2023 Order.

19

96.     As set forth above, North Carolina law dictates exactly how a person may become lawfully registered as required by the state Constitution.

97.     The NCSBE affirmatively refused to follow this process or its cure procedures when it specifically declined to contact any of the potentially affected registrants, as set forth in its December 6, 2023 Order.

98.     An actual, real, presently existing, concrete, and justiciable controversy exists between Plaintiffs and Defendants regarding, among other things, whether the NCSBE's refusal to contact these persons and their justification for said refusal is supported by North Carolina law.

99.     Similarly, such a controversy exists between Plaintiffs and Defendants regarding, among other things, whether a person who fails to provide the information required by N.C. Gen. Stat. § 163-82.4(a)(11) and whose information is not timely received pursuant to § 163-82.4(f) but provides a form of identification at the polls is deemed "registered" under North Carolina law.

100.     Defendants' actions have harmed and will continue to irreparably harm Plaintiffs unless and until this Court enters declaratory and injunctive relief in Plaintiffs' favor.

101.     The NCSBE's December 6, 2023 Order exceeded the NCSBE's statutory authority and jurisdiction and is infected by errors in law.

102.     Accordingly, Plaintiffs are entitled to a ruling from the Court reversing the NCSBE's December 6, 2023 Order insofar as it claimed that providing alternative forms of identification at the polls would cure any missing information required by North Carolina law and/or a declaratory judgment declaring that:

     a.     Such persons are not lawfully registered as defined and provided by North Carolina law; and

b. To be cast a valid ballot, such persons must (i) provide the missing information in the time required by N.C. Gen. Stat. § 163-82.4(f) or affirmatively attest that they do not have such information; and (ii) meet all other requirements imposed by North Carolina law.

103. Plaintiffs are also entitled to preliminary and permanent injunctive relief requiring Defendants to take the following steps:

a. Immediately identify and segregate ballots cast in the November 5, 2024 state office general election contest by persons with voter registration forms were returned missing the information required by N.C. Gen. Stat. § 163-82.4(a)(11);

b. Determine which of those persons, if any, was validly assigned a voter identification number as provided by N.C. Gen. Stat. § 163-82.4(b);

c. For those persons who were not validly provided such a number, remove their votes from final election counts for all state election contests in the November 5, 2024 state office general election contests, or alternatively, comply with a judicially created process wherein such affected individuals may be afforded an expedited but reasonable time to provide the information which the NCSBE should have originally collected in accordance with N.C. Gen. Stat. § 163-82.4(f), and if such information is not received and verified by said date, then Defendants must remove the person's vote from the final election counts for all state office election contests in the November 5, 2024 state general election; and

d. Order the NCSBE to immediately contact such persons and request the missing information such that all otherwise qualified voters may be properly registered in time for the next election contest.

21

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.  Issue a writ of mandamus ordering Defendants to comply with the practices and procedures set forth in N.C. Gen. Stat. § 163-82.4(f), including:

    a.  Ordering Defendants to contact every person who submitted a voter registration application which was accepted and processed without providing the information required in N.C. Gen. Stat. § 163-82.4(a)(11) and requesting the person provide the missing information in a timely fashion and no later than the times set forth in N.C. Gen. Stat. § 163-82.4(f).

2.  Grant injunctive relief requiring Defendants to:

    a.  Immediately identify and segregate ballots cast in the November 5, 2024 state office general election contest by persons whose voter registration forms were returned missing the information required by N.C. Gen. Stat. § 163-82.4(a)(11);

    b.  Determine which of those persons, if any, was validly assigned a voter identification number as provided by N.C. Gen. Stat. § 163-82.4(b);

    c.  For those persons who were not validly provided such a number, remove their votes from final election counts for all state office election contests in the November 5, 2024 state general election, or alternatively, establish a judicially created process wherein such affected individuals may be afforded an expedited but reasonable time to provide the information which the NCSBE should have originally collected in accordance with N.C. Gen. Stat. § 163-82.4(f), and if such information is not received and verified by said date, then Defendants must remove the person's vote

from the final election counts for all state office election contests in the November 5, 2024 state general election;

    d.   Ordering the NCSBE to immediately contact such persons and request the missing information such that all otherwise qualified voters may be properly registered in time for the next election contest; and

    e.   Take all other steps necessary to cure the harm caused by Defendants' state statutory and state Constitutional violations.

3. Enter a declaratory judgment reversing the NCSBE's December 6, 2023 Order insofar as it claimed that providing alternative forms of identification at the polls would cure any missing information required by North Carolina law.

4. Enter a declaratory judgment providing that persons who fail to provide the information required by N.C. Gen. Stat. § 163-82.4(a)(11) are not lawfully registered to vote as defined and provided by North Carolina law.

5. Enter a declaratory judgment providing that to cast a valid ballot, all persons with incomplete voter registration forms which are missing the information required by N.C. Gen. Stat. § 163-82.4(a)(11) must: (i) provide the missing information in the time required by N.C. Gen. Stat. § 163-82.4(f) or affirmatively attest that they do not have such information; and (ii) meet all other requirements imposed by North Carolina law.

6. Award Plaintiffs their reasonable attorney's fees, litigation expenses, and associated costs incurred in connection with this action, as otherwise permitted by law;

7. Retain jurisdiction over this matter to ensure Defendants comply with any orders issued by this Court; and

8. Grant such additional relief deemed just and proper.

Respectfully submitted, this, the 31st day of December, 2024.

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: /s/  Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com
*Counsel for Plaintiffs*

## VERIFICATION

I, Telia C. Kivett, affirm under the penalty of perjury, that the foregoing representations in this Verified Complaint are true to my own knowledge, except as to matters stated upon information and belief, and as to those matters, I believe them to be true.

By: *[signature]*

Date: 12/31/2024

Sampson County
STATE OF NORTH CAROLINA

Sworn and subscribed to me on this, the 31st day of December, 2024.

*[notary seal]*

*[signature]*
Notary Public

My Commission Expires: 11/4/2027