# EXHIBIT J

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | NO. 24CV041789-910 |

| TELIA KIVETT; KARYN MULLIGAN; WAKE COUNTY REPUBLICAN PARTY; REPUBLICAN NATIONAL COMMITTEE; and NORTH CAROLINA REPUBLICAN PARTY, *Plaintiffs*, v. NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections; ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections; JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections; STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as members of the North Carolina State Board of Elections, *Defendants*. | **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** *Emergency Relief Requested* |

NOW COMES Plaintiffs Telia Kivett, Karyn Mulligan, the Wake County Republican Party ("Wake GOP"), the Republican National Committee ("RNC"), and the North Carolina Republican Party ("NCGOP"), by and through undersigned counsel and pursuant to Rule 65 of the North Carolina Rules of Civil Procedure, move this Court to issue a temporary restraining order and preliminary injunction. Specifically, this Court should order Defendants to identify and segregate ballots cast in the November 5, 2024 state office general election contest by persons whose voter registration forms were returned missing the information required by N.C. Gen. Stat. § 163-82.4(a)(11), determine which of those persons, if any, was validly assigned a voter identification number as provided by N.C. Gen. Stat. § 163-82.4(c), and for those persons who were not validly

1

provided such a number, remove their votes from final election counts for all state election contests in the November 5, 2024 state office general election contests. Alternatively, Defendants should be ordered to comply with a judicially created process wherein such affected individuals may be afforded an expedited but reasonable time to provide the information which the NCSBE should have collected in accordance with N.C. Gen. Stat. § 163-82.4(f), and if such information is not received by said date, then Defendants must remove the person's vote from the final election counts for all state office election contests in the November 5, 2024 state office general election. In support of this Motion, Plaintiffs show the Court as follows:

## INTRODUCTION

1. North Carolina law requires that persons wishing to vote in the state's elections register following state law. *See* N.C. Const. art. VI § 3; N.C. Gen. Stat. §§ 163-82.3, .4, and .11.

2. Importantly, North Carolina requires that the voter registration form collects, among other things, an applicant's driver's license number or social security number. *See* N.C. Gen. Stat. § 163-82.4(a)(11). North Carolina law does not provide for any deviation or wholesale ignoring of this requirement,[1] yet that is exactly what the NCSBE has done.

3. Failure to collect this information on the front end means that the registration is incomplete and, by definition, the person is not "registered" under North Carolina law.

4. Nevertheless, the General Assembly established clear statutory procedures and timelines to collect the missing information and remedy these deficiencies in a timely manner to

---

[1] North Carolina law does have a provision for individuals who do not have either a driver's license number or a social security number, providing that that specific subset of person may be assigned a unique voter identification number. *See* N.C. Gen. Stat. § 163-82.4(b). However, this provision only applies if it is confirmed that the registrant does not have this information. It is not an alternative to the general collection requirements and procedures set forth in N.C. Gen. Stat. § 163-82.4(a)(f), nor does it absolve the NCSBE of their violations of state law here.

2

determine if the affected person is qualified to register to vote and if their vote may be counted. *See* N.C. Gen. Stat. §163-82.4(f).

5. This statutory failsafe notwithstanding, the NCSBE willingly failed to timely collect this information from at least 60,000 voters with incomplete registration forms, and it has counted those votes in the November 5, 2024 general election for state offices. This is a plain violation of state law.

6. In the aftermath of the November 5, 2024 general election, the NCSBE's counting of unlawful votes would be outcome determinative for many state and local races, several of which currently have razor-thin margins. To allow those unlawful votes to decide the outcome of such state and local races would fundamentally undermine democracy—a democracy in which eligible voters alone should decide electoral outcomes.

7. Defendants' brazen failure to comply with state law forces Plaintiffs to turn to this Court for urgent relief.

8. Plaintiffs initiated this action by filing a Complaint for declaratory and injunctive relief on December 31, 2024. Individual Plaintiff Telia Kivett subsequently filed a verification of the Complaint soon thereafter.

9. Plaintiffs' Complaint seeks several forms of relief, including:

    a. a writ of mandamus ordering Defendants to comply with the practices and procedures set forth in N.C. Gen. Stat. § 163-82.4(f);

    b. injunctive relief requiring the identification and segregation of ballots cast by affected persons, determination of whether those persons were validly registered,

3

removal of all unauthorized votes, and ordering Defendants to remedy the missing information prior to the next election[2]; and

c. declaratory judgments to reverse the NCSBE's unlawful course of action, declaring that persons who fail to provide information required by N.C. Gen. Stat. § 163-82.4(a)(11) are not lawfully registered to vote under North Carolina law, and that all persons with incomplete voter registration forms must provide complete information and otherwise comply with North Carolina law to be considered lawfully registered voters.

(Compl., Prayer for Relief).

## **FACTUAL BACKGROUND**

10. Article VI, § 3 of the North Carolina Constitution requires that any person wishing to vote must be registered. (Compl. ¶¶ 1, 31).

11. The North Carolina General Assembly sets forth express authority for the NCSBE to promulgate a registration form. Express statutory authority identifies certain information that <u>must</u> be collected before the application can be process and an applicant deemed "registered," and likewise identifies specific categories of information that, while required, shall not be the basis for a registration form's denial. (Compl. ¶¶ 32-33). An applicant's driver's license number or social security number is one of the non-negotiable, required categories of information which must be collected before a registration form may be processed and deemed "complete."

---

[2] Alternatively, Plaintiffs seek the creation and implementation of a judicial process providing affected persons an expedited but reasonable amount of time to provide the information the NCSBE should have timely collected in the first instance and, if the information is not provided by a set date, then Defendants must be ordered to discount all impacted ballots from all state contests in the November 5, 2024 state office general election.

12. North Carolina elections law further mandates that the NCSBE collect any missing information in a timely manner for any ballots case by the applicant to count in future elections, including a driver's license or social security number. (*Id.* ¶ 34).

13. Defendants have flouted this law for at least a decade, using a statewide voter registration form that failed to collect a registrant's driver's license number and/or the last four digits of their social security number, resulting in approximately 225,000 voter registrations. (*Id.* ¶¶ 49-50). They refused to remedy their noncompliance with state law prior to the November 5, 2024 election, under the theory that the unlawfully registered voters would filter themselves out at the polls through other unrelated voting requirements. (*Id.* ¶¶ 51-54).

14. That position not only violated state law, but also turned out to be incorrect: post-election audits performed by third parties using documents provided by the NCSBE pursuant to public records requests confirmed that at least 60,000 people voted in North Carolina's November 5, 2024 state office general election contests without providing either a driver's license number or a social security number, and even if these voters provided a driver's license number pursuant to N.C. Gen. Stat. § 163-166.16, neither the NCSBE nor the County Boards made any record of such. (*Id.* ¶¶ 55-56).

15. As of the date of this Motion, the time for county canvasses has passed, and the NCSBE and the County Boards failed to collect the information required by N.C. Gen. Stat. § 163-82.4(a)(11) in the manner and time demanded by § 82.4(f) for at least 60,000 persons who cast ballots in the November 5, 2024 state office general election contests. Defendants have therefore plainly violated North Carolina law, and judicial intervention is necessary.

**ARGUMENT**

16. Plaintiffs seek injunctive relief because they will be seriously and irreparably harmed by Defendants' actions in permitting unlawfully registered voters to have their votes counted in the recent November 5, 2024 state elections and in future such elections.

17. Without the requested injunctive relief, Defendants have certified and will continue to certify state and local elections in which the results may have been decided by persons who are not lawfully registered voters, and Defendants will continue to facilitate ongoing violations of the North Carolina Constitution. This course of action impermissibly dilutes the votes of the Individual Plaintiffs and all other duly-registered voters across the state in state and local elections and violates their constitutional rights. Similarly, this damages the missions, election-related efforts, and electoral prospects of the organizational Plaintiffs.

**I. Legal Standard**

18. This court has the inherent authority to issue injunctive relief upon application from a party. *State v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 913, *on reh'g*, 299 N.C. 731, 265 S.E.2d 387 (1980) (stating that injunctive relief is "a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities.").

19. Issuance of a preliminary injunction is appropriate when necessary to avoid immediate and irreparable injury to a party. *See* N.C. R. Civ. P. 65; *see also A.E.P. Indus., Inc. v. McClure*, 309 N.C. 393, 401, 302 S.E.2d 754, 759 (1983).

20. To demonstrate entitlement to a preliminary injunction, Plaintiffs must establish: (1) likelihood of success on the merits; and (2) that they are likely to sustain irreparable loss unless the injunction is issued, or if, in the Court's opinion, issuance is necessary for the protection of

6

Plaintiffs' rights during the course of the litigation. *See Ridge Cmty. Invs., Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977).

21. Notably, Plaintiffs' likelihood of success on the merits means a "reasonable likelihood." *See A.E.P. Indus., Inc.*, 308 N.C. at 402, 302 S.E.2d at 760.

## II. Plaintiffs Have Established a Reasonable Likelihood of Success on the Merits

22. Plaintiffs have established a reasonable likelihood of success on the merits of their claims based on undisputable evidence that Defendants have openly refused to comply with state law. Under the North Carolina Constitution and state law, only lawfully registered North Carolinians may vote in elections for state and local offices. *See* N.C. Const. art. VI, § 3. State law prescribes the information required to be requested of applicants. N.C. Gen. Stat. § 163-82.4(a). Furthermore, North Carolina's statutes specify that the failure to state certain categories of information (race, ethnicity, gender, or telephone number) shall not form the basis for denying an application. *Id.* ("[N]o application shall be denied because an applicant does not state race, ethnicity, gender, or telephone number."). Applying the canon of statutory construction *expressio unius est exclusio alterius* (the inclusion of one is to the exclusion of all others), the General Assembly's inclusion of those categories of information it determined should not form the basis of a denial means that the other enumerated categories of information—critically, including driver's license number or social security number—should form the basis of denial of a voter registration application. *See Evans v. Diaz*, 333 N.C. 774, 780, 430 S.E.2d 244, 247 (1993) ("[W]hen a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list.") (citation omitted).

23. Based on the plain meaning of North Carolina's statutes, Plaintiffs have demonstrated a likelihood of success on the merits.

7

Case 5:25-cv-00003-M-BM    Document 1-13    Filed 01/02/25    Page 8 of 12

24. Moreover, based on the Defendants' own conduct and admissions, Plaintiffs have demonstrated a likelihood of success on the merits. Defendants have already acknowledged that their failure to collect driver's license or social security number information was wrong when they *prospectively* changed course. (Compl. ¶¶ 49-50). But they failed to go far enough when they repeatedly and deliberately declined to correct that same violation of law for the November 5, 2024 elections for state and local offices, all under a clearly erroneous and unsupported theory that these unlawful acts would somehow remedy themselves. (*Id.* at ¶¶ 51-55) Unfortunately for Defendants—and qualified North Carolina voters—this intentional inaction only proved to cause greater harm and inject unwarranted uncertainty into the election results for contests for state offices.

25. In light of the foregoing, Plaintiffs are reasonably likely to succeed on the merits of their claims and immediate relief is warranted.

### III. Absent the Relief Sought, Plaintiffs Will Be Substantially and Irreparably Harmed

26. Plaintiffs' undeniable constitutional and statutory rights to vote in free and fair elections, where only lawfully-registered voters participate, are at immediate risk, absent an injunction. *See* N.C. Const. art. VI § 3; *see also* N.C. Const. art. I § 10.

27. Absent an injunction, organizational Plaintiffs' will be substantially and irreparably harmed in their respective missions, election-related efforts, and their electoral prospects. Further, individual Plaintiffs' constitutional rights will be substantially harmed and their votes will be impermissibly diluted. As to both sets of Plaintiffs, this harm will be exacerbated, should relief not be available before the November 5, 2024 election. Simply put, the bulk of the damage will already be done.

28. In contrast, Defendants will suffer little if any harm, should the injunction issue. Defendants can easily identify and segregate those ballots cast by voters who failed to provide the necessary information on their voter registration applications and can just as easily account for the changes in vote tallies necessary to remove the votes of any unlawfully-registered voters.

29. Similarly, and to the extent Defendants claim a supposed burden or risk of violations of principles of due process, Plaintiffs' prayer for relief accounts for the same, specifically requesting the creation of a judicial process which would solicit and collect the missing registration information in accordance with the statutory duties the NCSBE willfully chose to ignore. This alternative relief mitigates any such concerns or supposed burden on Defendants or persons who may be affected.

## **CONCLUSION**

30. Defendants are already constitutionally prohibited from allowing the unlawfully-registered voters to vote in North Carolina's elections. Thus, to the extent Defendants claim a burden in having to ensure residency requirements of a subset of registrants, the same is already required by North Carolina law.

31. In sum, the equities favor Plaintiffs especially insofar as they are seeking to vindicate pre-established rights and protect the validity of their votes.

WHEREFORE, Plaintiffs respectfully request this Court enter an Order:

    a. Declaring that Defendants' registration of voters who failed to provide the information required under N.C. Gen. Stat. § 163-82.4(a)(11) violates Article VI, § 3 of the North Carolina Constitution and enjoining Defendants from using the same to allow any such unlawfully registered voter to vote in North Carolina's elections for state and local offices;

b.     Directing Defendants to immediately identify and segregate those ballots cast by affected persons, determinate of whether those persons were validly registered, and remove of all unauthorized votes in elections cast in the November 5, 2024 elections for state and local offices, or alternatively, Defendants should be ordered to comply with a judicially created process wherein such affected individuals may be afforded an expedited but reasonable time to provide the information which the NCSBE should have collected in accordance with N.C. Gen. Stat. § 163-82.4(f), and if such information is not received by said date, then Defendants must remove the person's vote from the final election counts for all state office election contests in the November 5, 2024 state office general election.;

c.     Issuing a writ of mandamus requiring Defendants to immediately begin complying with the processes outlined in N.C. Gen. Stat. §§ 163-82.4(f) prior to any future election; and

d.     For any other relief deemed just and proper.

Respectfully submitted, this, the 2nd day of January, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/  Phillip J. Strach
Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com
*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on this, the 2nd day of January, 2025, I served a true and accurate copy of the foregoing **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** upon all counsel of record by using the Odyssey e-file and serve feature, sending a copy of the same to all counsel of record via e-mail, and sending a copy via U.S. Mail, postage prepaid and addressed as follows:

Terence Steed
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Tsteed@ncdoj.gov

Mary Carla Babb
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
MCBabb@ncdoj.gov

*Counsel for Defendants*

                                        /s/ Phillip J. Strach
                                        Phillip J. Strach