IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
No. 5:25-cv-00003-M-BM

| | |
|---|---|
| TELIA KIVETT, *et al.*,<br>                        *Plaintiffs*,<br>v.<br>NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*,<br>                        *Defendants*. | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO REMAND TO STATE COURT AND FOR EXPEDITED CONSIDERATION OF THE SAME** |

      Plaintiffs Telia Kivett, Karyn Mulligan, the Wake County Republican Party, the North Carolina Republican Party, and the Republican National Committee (collectively, "Plaintiffs") hereby submit this Memorandum of Law in support of their Emergency Motion to Remand to State Court.

## INTRODUCTION

      Plaintiffs' Complaint is exclusively a creature of state law; it is wholly focused on and reliant upon state law both in its allegations and its claims for relief. The Complaint is devoid of <u>any</u> connections, explicit or implicit, to federal law or federal elections. Instead of engaging with these novel issues of state law in state court where they belong, Defendants removed this matter in the same manner which they have removed virtually every other lawsuit arising from their unlawful administration of the November 5, 2024 general election.[1] This type of gamesmanship should not be counseled and a remand to state court should issue immediately.

---

[1] Tellingly, Defendants Removal includes a generic claim under 28 U.S.C. § 1443(2), signaling to Plaintiffs and this Court that, should Defendants lose on their bid to remove the matter—no matter how dubious the grounds for removal—they will nevertheless appeal the decision and further delay any sort of accountability for their actions.

1

In this case, Plaintiffs filed suit in North Carolina state court, alleging violations of the North Carolina Constitution and North Carolina law by Defendants the North Carolina State Board of Elections ("NCSBE") and its members Alan Hirsch, Jeff Carmon, Siobhan Millen, Stacy Eggers IV, and Kevin Lewis in their respective official capacities, and the NCSBE's Executive Director Karen Brinson Bell (collectively "Defendants") in their administration of the November 5, 2024 general election contests for state office. Plaintiffs' Complaint seeks a Writ of Mandamus compelling Defendants to fulfill their duties as set forth in N.C. Gen. Stat. § 163-82.4(f). Similarly, Plaintiffs' Complaint seeks declaratory and injunctive relief arising under various theories of state law, including Defendants' violations of N.C. Const. art. I §§ 10 and 19. Due to these violations, Defendants ask the state court to, among other things, establish a process to identify all persons who voted in the November 5, 2024 state office general election contests despite being improperly registered in violation of N.C. Gen. Stat. § 163-82.4, *et seq.*, and require Defendants to collect the information they should have obtained on the front end. Despite these issues of purely state law, Defendants removed the matter to this Court, claiming a host of vague allegations relating to federal law. Aside from reciting the same tired playbook Defendants have repeatedly employed throughout the November 5, 2024 election cycle, the removal fails to establish how this Court's jurisdiction is properly invoked for this specific matter.

In sum, Plaintiffs' requested relief is exclusively derived from state law and Defendants' violations thereof. Nothing contained within the Complaint or the relief sought has any direct or indirect impact on federal law or federal elections contests. Accordingly, a remand to state court is warranted as it is the court best suited to interpret these unique issues of state law, especially at this stage of first impression.

2

Case 5:25-cv-00003-M-BM    Document 18    Filed 01/03/25    Page 2 of 19

## PROCEDURAL BACKGROUND

Plaintiffs filed their verified complaint in Wake County Superior Court on December 31, 2024, seeking a writ of mandamus and certain declaratory and injunctive relief arising from Defendants' violations of the North Carolina Constitution and various North Carolina General Statutes. (Compl. at ¶¶ 60-103). That same day Plaintiffs' counsel provided a copy of the complaint to Defendants' counsel and inquired as to their authority to accept service. Defendants' counsel did not respond to Plaintiffs' message. On January 2, 2025, Plaintiffs filed an emergency motion for a temporary restraining order and a preliminary injunction with the Wake County Superior Court. Immediately after filing, Plaintiffs' counsel provided a copy of the motion to Defendants' counsel and again asked whether they were authorized to accept service. Defendants' counsel still did not respond to Plaintiffs' message. Then, in the evening of January 2, 2025, Defendants' counsel noticed their removal to this Court ("Removal").

In support of their Removal, Defendants vaguely cite several statutes, including 28 U.S.C. §§ 1331, 1441(a), 1443(2), and 1367(a). Defendants also recite a set of boilerplate theories which have become familiar language to them throughout the November 5, 2024 election cycle.[2] This recital includes generalized statements that Plaintiffs' relief somehow invokes various federal statutes such as the Help America Vote Act ("HAVA") Pub. L. No. 107-252, 116 Stat. 1666 (2002) codified at 52 U.S.C. § 20901, *et seq.*, and the National Voter Registration Act ("NVRA"), Pub. L. No. 103-31, 107 Stat. 77 (1993) codified at 52 U.S.C. § 20501, *et seq.* and that Plaintiffs are in

---

[2] Defendants' removal recites, practically verbatim, the same arguments they have filed with this Court in removing virtually all actions brought against them in North Carolina state courts regarding the November 5, 2024 general election cycle. *See e.g., Republican National Committee v. North Carolina State Board of Elections,* 5:24-cv-00547-M (E.D.N.C. 2024); *see also Wasserberg v. North Carolina State Board of Elections*, 5:24-cv-00578 (E.D.N.C. 2024); *see also Griffin v. North Carolina State Board of Elections*, 5:24-cv-00724 (E.D.N.C. 2024).

3

some way asking Defendants to take actions "inconsistent" with certain statutes such as the Voting Rights Act ("VRA") 52 U.S.C. § 10101, *et seq*.

For the reasons discussed below, none of these arguments carry any weight.

## FACTUAL BACKGROUND

The North Carolina Constitution provides several express prerequisites for a person wishing to vote in the state's elections. Amongst other requirements, Article VI § 3 provides that a person must be registered to vote. (Compl. ¶¶ 1, 30). In order to determine how and when a person may be considered "registered" under state law, the North Carolina Constitution and North Carolina General Statutes defer to the General Assembly. (*Id.* at ¶¶ 2, 31, 32). The General Assembly, in turn, created a set of statutory procedures wherein they delegated the power to create a statewide voter registration form to the NCSBE. (*Id.* at ¶¶ 34-35). Specifically, North Carolina General Statute § 163-82.3 establishes and empowers the NCSBE with the ability to promulgate a registration form. (*Id.* at ¶ 31, 34). General Statute § 163-82.3, in turn, looks to § 163-82.4(a) for the information which the General Assembly designated as required to be collected by the statewide voter registration form. (*Id.* at ¶ 36). Critically, § 163-82.4(a)(11) requires that the registration form collect the applicant's driver's license number and, if they do not have such a number, then the last four digits of their social security number. (*Id.* at ¶¶ 35-38). Only if the applicant lacks either number does North Carolina law allow the NCSBE to assign them a unique voter identification number. (*Id.* at ¶¶ 37-38) (citing N.C. Gen. Stat. § 163-82.4(b)).

The North Carolina General Assembly spoke to exactly what information is absolutely necessary before a registration form may be accepted and processed versus what information "shall not" form the basis for a form's rejection. (*Id.* at ¶¶ 31-33); *see also* N.C. Gen. Stat. § 163-82.4(a) (listing race, ethnicity, gender, or telephone number as the sole required items which cannot cause

4

a registration form to be denied if omitted). The information required by § 163-82.4(a)(11)—i.e., the applicant's driver's license or social security number—falls into the former of the two categories. (Compl. at ¶¶ 33, 38-41). Nevertheless, the North Carolina General Assembly created a failsafe process for the NCSBE to follow if it receives registration forms which lack required information, including specifying exactly how any ballots cast by persons with incomplete registration may still be counted in an election. (*Id.* at ¶¶ 42-46) (citing N.C. Gen. Stat. § 163-82.4(f)). Specifically, § 163-82.4(f) requires the NCSBE and its county boards of election to contact the voter and notify them of their omission and incomplete registration and request the information be provided. (*Id.* at ¶¶ 43-45). In the case of a ballot cast by the voter with an incomplete registration, North Carolina law requires the NCSBE to have received the missing information by no later than 5:00 p.m. the day before the county canvass. (*Id.* at ¶¶ 43-46) (citing N.C. Gen. Stat. § 163-82.4(f)). Only if the information is timely received and verified may the person's vote be counted. (*Id.* at ¶ 47).

For over a decade the NCSBE used a statewide voter registration form which failed to collect the information required by state law, namely, the applicant's driver's license number and social security number. (Compl. at ¶¶ 48-49). The NCSBE recognized this error when it prospectively changed the form. (*Id.* at ¶ 50). However, the NCSBE affirmatively and repeatedly refused to contact <u>any</u> of the persons with incomplete registration forms, reasoning that these individuals would filter themselves out at the polls due to other requirements such as North Carolina's photo identification law—N.C. Gen. Stat. § 166-12(d). (*Id.* at ¶¶ 50-51). Not only does this position find no support in North Carolina law,[3] but it also proved to be patently untrue as at

---

[3] North Carolina law distinguishes between the purposes for providing a driver's license or social security number when registering to vote versus providing photo identification at the polls. (Compl. at ¶ 51, n.3). The former is used to confirm a person's eligibility to vote while the latter

5

least 60,000 people who voted in the November 5, 2024 state office general election contests did so despite failing to provide the information required by N.C. Gen. Stat. § 163-82.4(a)(11).[4] (*Id.* at ¶¶ 53-55).

As of the date Plaintiffs filed their Complaint, the time for county canvasses had passed and the NCSBE had undeniably failed to collect the information required by N.C. Gen. Stat. § 163-82.4(a)(11) in the manner prescribed by N.C. Gen. Stat. § 163-82.4(f) for at least 60,000 people who cast ballots in the November 5, 2024 state office general election contests. (Compl. at ¶¶ 56-58). Instead of remedying their unlawful actions, Defendants repeatedly denied any affirmative relief, claiming it would be "unfair" to discount the votes of people who the NCSBE wrongly allowed to believe were registered in the first place. (*Id.* at ¶ 59).[5] Defendants cannot and do not cite to any authority allowing them to ignore the duties state law demands of them. (*Id.*).

## **LEGAL STANDARD**

A defendant may remove a state court action to federal court only if the federal court would have been able to exercise original jurisdiction based on the face of the state court complaint. 28 U.S.C. § 1441(a). If, at any time, it appears that a federal court lacks subject matter jurisdiction, it must remand the case to the state court. 28 U.S.C. § 1447(c).

In order for a federal court to exercise federal question jurisdiction, the action must arise under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A "suit arises

---

is used to confirm the validly registered voter's identity. (*Id.*) (citing N.C. Gen. Stat. §§163-82.4, .12, 166.12(d), 08 NCAC 17.0101, and *Holmes v. Moore*, 384 N.C. 426 (2023)).

[4] To the extent these persons did provide a photo identification at the polls, it is clear from Defendants' own records that any missing numbers were not recorded. (Compl. at ¶¶ 54-55).

[5] Defendants' subjective notions of fairness aside, Plaintiffs' Complaint expressly requests the creation of a state judicial process which would timely solicit and collect this information prior to any votes being removed from the totals for all affected state office contests, thus mitigating any "fairness" concerns and similarly forcing Defendants to take the actions under state law which they should have done in the first instance. (*Id.* at ¶ 75; *see also id.* at Prayer for Relief).

6

under the law that creates the cause of action." *American Well Works v. Layne*, 241 U.S. 257, 260 (1916). "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint. The rule makes the plaintiff the master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citation omitted). A plaintiff may avoid federal jurisdiction "by exclusive reliance on state law." *Id.* A party seeking removal may not invoke federal jurisdiction based upon a remedy or a defense. *Id.*; *see also Common Cause v. Lewis*, 358 F. Supp. 3d 505, 514 (E.D.N.C. 2019), *aff'd*, 956 F.3d 246 (4th Cir. 2020) (rejecting the argument that removal was proper because a state law challenge's remedy would conflict with federal law); *Aegis Def. Servs., LLC v. Chenega-Patriot Grp., LLC,* 141 F. Supp. 3d 479, 485 (E.D. Va. 2015) (holding that even if the remedy sought is exclusively federal in nature, that alone does not support federal question jurisdiction if the claim itself is based in state law). Similarly, the presence of a tangential federal issue within a state law cause of action does not *per se* confer federal jurisdiction. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

## ARGUMENT

Plaintiffs' Complaint raises no federal question in any form. Not only do the claims for relief arise exclusively under state law, much like Defendants' violations themselves, but the requested remedies are solely applicable to state contests in the November 5, 2024, general election. *See* (Compl. at Prayer for Relief). By definition, the federal statutes which Defendants rely on in support of removal are wholly inapplicable to these contests. *See generally* 52 U.S.C. § 20901, *et seq*. (stating that the purpose of HAVA is to "assist in the administration of <u>Federal</u> elections and to otherwise provide assistance with the administration of <u>Federal election laws and</u>

7

programs[.]") (emphasis added); *see also* § 21081 (outlining the requirements for voting systems used in elections for federal office); *see also, e.g., Broyles v. Texas*, 618 F. Supp. 2d 661 (S.D. Tex. 2009), *aff'd,* 381 F. App'x 370 (5th Cir. 2010) (noting that courts who have confronted the issue have held that HAVA "does not apply to state or municipal registration or ballot questions without a federal component."). The general federal statutes Defendants point to as the basis for removal are unaffected by the plain language of the Complaint which specifically disclaims the actions Defendants rely upon for jurisdiction. *See* (Compl. at ¶¶ 73, n.5; *see also id.* at Prayer for Relief).

In determining whether remand is proper, this Court looks to the well-pleaded complaint rule which provides that a court should "ordinarily . . . look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996) (alteration in original)). Here, Plaintiffs' well-pleaded complaint is intensely state-law specific, focusing solely on contests for state office and disclaiming any actions or relief which would implicate federal law in any form. *See* (Compl. at ¶ 73, n.5; *see also id.* at Prayer for Relief). This fact alone should foreclose any further inquiry and demand an immediate remand.

However, in a narrow subset of cases the Court may look beyond the well-pleaded complaint and inquire into whether the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims." *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988)); *see also Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (describing removal under the "substantial federal question doctrine" as applying to only "a slim category of cases"). A defendant seeking removal under these circumstances must establish that: "(1) the federal

8

question must be necessarily raised; (2) the federal question must be actually disputed; (3) the federal question must be substantial, "meaning that its resolution is important to the federal system as a whole,"; and (4) "the federal system must be able to hear the issue without disturbing any congressionally approved balance for federal and state judicial responsibilities." *See id.* (citing *Gunn v. Minton*, 568 U.S. 251, 260 (2013); *see also Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Here too Defendants' removal fails.

Defendants simply cannot meet any of the *Gunn-Grable* factors, much like they cannot escape the inconvenient fact that Plaintiffs' Complaint has neither an impact on nor takes guidance from <u>any</u> federal laws.

## I. Plaintiffs' Complaint Does Not Raise Any Question of Federal Law.

"[A] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when **every** legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in original). "In other words, if the plaintiff can support [the] claim with even one theory that does not call for an interpretation of federal law, [the] claim does not arise under federal law[.]" *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 818 (4th Cir. 2004). For a federal question to be deemed "necessarily raised," under the first prong of the *Gunn-Grable* framework, it must be a "necessary element of one of the well-pleaded state claims." *See Burrell*, 918 F.3d at 381. However, the court must distinguish between state law claims which may involve federal standards and those which necessarily turn on a question of federal law because "the mere presence of a federal issue in a state cause of action is not enough to confer [federal] jurisdiction." *See Merrell Dow Pharms. Inc.* 478 U.S. at 813. Regardless of the two distinct categories, Plaintiffs' claims fall into neither.

9

***First***, the Complaint is devoid of <u>any</u> discussions of or references to federal law. In fact, the plain language affirmatively disclaims any relief which would touch upon federal law or federal elections. For example, Plaintiffs make clear that they are not seeking the removal of any person from the state's voter registration lists, primarily because individuals from whom the NCSBE failed to collect the missing information from may still have the information which would qualify them to vote under North Carolina law in future elections. (Compl. at ¶ 73, n.5). The question to be answered by the Complaint is whether these persons should have been allowed to cast ballots for the November 5, 2024 state office general election contests when the NCSBE failed to comply with the duties set forth in N.C. Gen. Stat. § 163-82.4 *et seq*. But this question, and the answer thereto, is exclusively one of state law. Because the face of the Complaint articulates numerous theories which reveal that the allegations raised and the relief sought turn entirely on state law and impact only state office contests, this *Gunn-Grable* factor weighs in favor of remand. *See Flying Pigs, LLC*, 757 F.3d at 182; *see also Dixon*, 369 F.3d at 818.

***Second***, none of the statutes which Defendants passively cite as warranting removal are applicable here. HAVA only applies to federal election contests and the Complaint is singularly focused on November 5, 2024 state office election contests. Plaintiffs' requested relief has no impact on the state voter registration lists, their maintenance, or any person's removal therefrom. (Compl. at ¶ 73, n.5). Thus, neither the cited provisions of the NVRA nor HAVA or the VRA are implicated on the face of the Complaint. *See Pinney*, 402 F.3d at 442 (discussing the well-pleaded complaint rule and stating that, for federal law to be a necessary part of plaintiff's right to relief, it must be a "necessary element" of the claim itself). And to the extent Defendants argue that Plaintiffs' requested relief would violate either these statutes or principles of due process, this argument also fails as Plaintiffs request a uniform process virtually identical to the one Defendants

10

refused to follow in the first instance. *See, e.g., Bush v. Gore*, 531 U.S. 98, 110 (recounting the requirements of a uniform system and standards to ensure due process in post-election dispute administration relating to ballots).

Defendants cannot articulate a single theory which requires the interpretation of any question of federal law. Plaintiffs do not ask the Court to craft any relief or take any interpretation of past actions to determine their lawfulness under federal law. However, Defendants have previously argued in other matters that, because North Carolina has a "unified" registration system which they claim aligns with federal law's requirements, then federal law must control the outcome of any questions regarding a person's status as validly registered to vote.[6] This argument ignores reality. The fact that North Carolina law references federal law in its list maintenance statutes is of no effect here as nothing in the Complaint would have any effect on those lists. Nothing in the state statutes at issue in this matter references or takes guidance from any federal law, and Defendants can cite to no authority warranting such a reading to be injected into the statutes' plain language. The argument that federal law and state law might require the same information, making federal law controlling, misses the mark and is wholly unsupported. The question here is whether these persons were lawfully registered under state law and state law only and whether Defendants' intentional failure to fulfill their state law duties is a violation of Plaintiffs' rights under the North Carolina constitution. *See Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *aff'd*, 952 F.3d 452 (4th Cir. 2020), *vacated and remanded*, 593 U.S. 230 (2021), *and aff'd*, 31 F.4th 178 (4th Cir. 2022) (rejecting arguments which mischaracterized plaintiff's claims of state law duties as federal ones due to them "implicat[ing]" federal law); *see also Ass'n*

---

[6] *See, e.g., Griffin v. North Carolina State Board of Elections*, 5:24-cv-00724 (E.D.N.C. 2024), at Dkt. no. 39, pp. 11-12.

*of Cmty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 837 (6th Cir. 1997) (noting that just because federal registration obligations may affect state registration procedures does not mean that federal law controls in cases of state law registration requirements for the election of state officials). Based on the well-pleaded complaint rule, Defendants arguments are foreclosed in their entirety. *See Pressl v. Appalachian Power Co.*, 842 F.3d 299, 305 (4th Cir. 2016).

**II.     There is No Dispute of Federal Law Raised by the Complaint.**

Whether or not a disputed question of federal law exists is determined by looking at the substance of Plaintiffs' claims, along with any facts the parties agree upon. *See Pressl*, 842 F.3d at 305. Where the parties agree about a federal law but disagree about a state law, courts routinely find that there is no federal question in dispute. *See, e.g., Mullins v. Dominion Energy S.C. Inc.*, No. 3:21-CV-03165-SAL, 2022 WL 1498293, at *4 (D.S.C. May 12, 2022) (finding that there was no federal question in dispute when the parties agreed on defendants' federal licensure status but disagreed on duties owed to plaintiffs under state law). Further, it is well established that asserting a defense based on federal law does not transform the state law claims into federal questions. *See Caterpillar Inc.* 482 U.S. at 392-93; *see also Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 198-99 (4th Cir. 2022), *cert denied*, 143 S. Ct. 1795 (2023). Naturally, this same principle holds true for assertions of federal obstacles to state law remedies. *See, e.g., Aegis Def. Servs., LLC*, 141 F. Supp. 3d at 485.

Here there is no dispute as to federal law, mainly because there is no question of federal law raised by the Complaint. The very essence of the Complaint is a dispute over state law duties and rights afforded thereunder. The Complaint is permeated with allegations of Defendant's violations of North Carolina law and how those acts directly and irreparably harmed Plaintiffs' rights under the North Carolina Constitution. (Compl. at ¶¶ 60-103). Even under a liberal reading

12

Defendants' Removal raises issues of federal defenses to the relief Plaintiffs' request. Setting aside their validity, it is well-established that asserting a defense based on federal law cannot form the basis for federal jurisdiction. *See Burrell*, 918 F.3d at 381 ("It is **not** enough that federal law becomes relevant by virtue of a [defense].") (citation omitted) (emphasis in original); *see also Common Cause*, 358 F.Supp.3d at 514 (rejecting claim that removal was warranted under the theory that federal law was an "affirmative element" of plaintiffs' *prima facie* claim). Accordingly, Defendants fail to establish this prong of the *Gunn-Grable* framework as well.

### III. Neither the Complaint Nor the Relief Requested Has Any Impact on the "Federal System as a Whole."

"In general, "a nearly pure issue of law, the resolution of which would establish a rule applicable to numerous ... cases" is substantial, while a "fact-bound and situation-specific" issue is not." *Columbus Emergency Grp., LLC v. Blue Cross & Blue Shield of N. Carolina*, No. 7:23-CV-1601-FL, 2024 WL 1342764, at *3 (E.D.N.C. Mar. 29, 2024). This court recently reaffirmed the Fourth Circuit's fundamental principle that "'fact-intensive inquiries into [defendant's] compliance with certain [federal] requirements' [are] not 'substantial in the relevant sense.'" *Id.* This rule, the *Columbus* court held, was especially true when a plaintiff's claims are retrospective in nature. *Id.* at 3-4.

This Complaint is the quintessential "fact-bound and situation-specific" issue of state law for which removal under the substantial federal question doctrine is unwarranted. As established, the Complaint is purely focused on Defendants' violations of state law and how those unlawful actions harmed Plaintiffs' rights under state law and the state Constitution. Plaintiff's claims are intensely fact-bound and North Carolina law-specific. For example, Plaintiffs argue that a person cannot be deemed registered under North Carolina law if they do not provide the information the state statutes require of them. (Compl. at ¶ 102; *see also id.* at Prayer for Relief). Plaintiffs do not

13

ask for any relief which would require an interpretation of federal law. And to the extent Defendants argue that these people's votes may not be discounted from state office election contests without implicating federal principles such as due process or the VRA's uniformity provision, this too is undercut by the plain language of Plaintiffs' claims for relief.[7] *See* (Compl. at Prayer for Relief) (requesting the implementation of a judicial process mirroring that which Defendants were required to follow but chose to ignore under N.C. Gen. Stat. § 163-82.4(f)).

IV. **Removal Here Runs Headlong Into State Sovereignty and North Carolina Courts' Ability to Decide Issues of North Carolina Law.**

Plaintiffs' causes of action are purely issues of state law, substantively independent of any federal law counterparts. As no court has interpreted the provisions of North Carolina law with regard to the harm to Plaintiffs' state law rights complained of, this issue is a novel one of first impression. Fundamental principles of state sovereignty counsel that a state court should be the body to decide such foundational questions, all of which require the application and interpretation of North Carolina's substantive law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *see also Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) (holding that when a federal question turns upon an unsettled issue of state law, the district court should stay the matter pending resolution of the dispute of state law). Because Defendants' removal would require this Court to inject itself into an unsettled and novel question of state law, the *Gunn-Grable* factors again counsel in favor of a remand.

---

[7] Any argument of this sort is one of a federal defense or remedy which cannot form the basis for removal. *See Caterpillar Inc.* 482 U.S. at 392-93.

## V. 28 U.S.C. § 1443(2) Is Wholly Inapplicable Here.

Looking beyond Defendants' routine employment of 28 U.S.C. § 1443(2) as a purported grounds for removal in all matters it has brought to this Court in relation to the November 5, 2024 election, the plain text of the statute reveals that this is a totally inapplicable to the case at bar.

28 U.S.C. § 1443(2) "was intended to enable state officers who refused to enforce discriminatory laws in conflict with Section 1 of the Civil Rights Act of 1866." *Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 310 (4th Cir. 2021). The Supreme Court has construed the phrase "any law providing for equal civil rights" to include any law providing for "specific civil rights in terms of racial equality." *See Georgia v. Rachel*, 384 U.S. 780, 792 (1966). While the Fourth Circuit has recently read § 1443(2) to include statutes such as the NVRA and its 90-day quiet period, *see Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 407 (4th Cir. 2024), such a reading is of no effect here for several reasons. First, Plaintiffs do not seek any removal of persons from voter registration lists, nor do they ask for any relief beyond a uniform, non-discriminatory process which (1) identifies the individuals from whom the NCSBE failed to collect certain information required by state law; and (2) addresses these deficiencies in accordance with what state law provides. Additionally, the NVRA is inapplicable here primarily because the individuals in question were never properly registered under state law, thus placing them beyond the scope of the NVRA's coverage and making removal under 28 U.S.C. § 1443(2) equally unavailable. *Compare Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1-2 (4th Cir. Oct. 27, 2024) (declining to adopt state's argument that a person who is not qualified to vote in the first instance cannot be covered by the NVRA's quiet provision); *with Beals v. VA Coal. for Immigrant Rts.*, No. 24A407, 2024 WL 4608863 (U.S. Oct. 30, 2024) (granting emergency stay and allowing the state to remove non-citizens from its voter rolls).

Defendants cannot plausibly claim that they refused to contact these persons with incomplete registrations on account of any discriminatory law or action, especially when Defendants point to the fact that federal law requires them to collect the same information—albeit for different purposes—as a basis for removal under *Gunn-Grable*. In any event, Defendants have repeatedly refused to contact these persons despite numerous requests to do so, beginning at the end of 2023. (Compl. at ¶¶ 50, 52, 95, 97, 101-02). Not once did Defendants cite to <u>any</u> federal law in support of this refusal to contact the affected registrants. Instead, Defendants expressly relied upon their reading of <u>state</u> photo identification law as their basis for refusing to act. (*Id.* at ¶¶ 50, n.2, 51). Thus, Defendants should not now be allowed to invoke the NVRA or any related statute to retroactively absolve their unlawful acts from judicial review.

## **CONCLUSION**

The removal Defendants purportedly assert here is one the Fourth Circuit has coined as applying only to a "slim category of cases." *See Burrell*, 918 F.3d at 380. Under Defendants' theories of removal, this Court would be required to expand the doctrine to untold regions, far beyond where it has ever gone before. Tellingly, Defendants cannot cite to any authority allowing such a result. Defendants' use of removal has proven to be their go-to tool for delaying and frustrating the rights of North Carolina voters who seek to vindicate their rights under state law. Because precedent makes clear that a remand to state court is necessary in situations such as this one, the Court should decline Defendants' invitation and allow Plaintiffs to expeditiously seek relief in state court where this matter was brought and where it belongs.

Plaintiffs respectfully request that this Court issue an expedited Order remanding this matter for further proceedings in Wake County Superior Court.

Respectfully submitted this, the 3rd day of January, 2025.

                                              **NELSON MULLINS RILEY &**
                                              **SCARBOROUGH LLP**
                                              **By**: /s/ Phillip J. Strach
                                              Phillip J. Strach
                                              N.C. State Bar no. 29456
                                              Jordan A. Koonts
                                              N.C. State Bar no. 59363
                                              301 Hillsborough Street, 14th Floor
                                              Raleigh, NC 27603
                                              T: (919) 329-3800
                                              F: (919) 329-3799
                                              phil.strach@nelsonmullins.com
                                              jordan.koonts@nelsonmullins.com
                                              *Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)**

I hereby certify that this memorandum of law is in compliance with Local Rule 7.2(f)(3) as the brief, including headings, footnotes, citations, and quotations, contains no more than 8,400 words, as indicated by my computer's word processing program.

Respectfully submitted this, the 3rd day of January, 2025.

/s/ Phillip J. Strach
Phillip J. Strach
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of such to all counsel of record in the above-captioned matter.

Respectfully submitted this, the 3rd day of January, 2025.

/s/ Phillip J. Strach
Phillip J. Strach
*Counsel for Plaintiffs*